# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **EDWARD JAMES CASH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-00075-O-BP** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Edward James Cash ("Cash") filed an application for Supplemental Security Income ('SSI") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding he was not disabled. Cash appeals. Because the Commissioner applied the correct legal standards in assessing Cash's medical limitations and substantial evidence supports his conclusions, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

## I.      BACKGROUND

Cash seeks disability benefits under Title XVI of the SSA, claiming disability since June 1, 2014. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 18-1 at 4. Cash filed for SSI on April 15, 2019. *Id.* Cash's SSI application specified several medical conditions that limit his ability to work, including schizoaffective disorder, affective disorder, anxiety disorder, posttraumatic stress disorder, borderline personality disorder, and asthma. Tr. 7. The Commissioner denied his application initially and upon reconsideration. Tr. 4.

Cash challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") who conducted a telephonic hearing and later affirmed the Commissioner's denial. Tr. 7, 25. After the Social Security Appeals Council denied Cash's further administrative review, he filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1 at 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Cash claims that he is disabled and thus entitled to SSI. ECF No. 1.

## II.     STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381-1383f. Claimants seeking benefits must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for [SSI]"). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). Third, disability exists if the

impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* § 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id.* § 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 4-25. First, the ALJ found Cash had engaged in substantial gainful activity from November 2019 to April 2020, but has not engaged in substantial gainful activity since then. Tr. 6. Second, she found six medically determinable impairments: asthma, affective disorder, schizoaffective disorder, anxiety disorder, posttraumatic stress disorder, and borderline personality disorder. Tr. 7. The ALJ found the asthma to be nonsevere. *Id.* Third, she identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* The ALJ then assessed Cash's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform the physical requirements of work at all exertional levels, except he can tolerate no more than occasional concentrated exposure to extreme temperatures, high humidity/wetness, or respiratory irritants, as defined in the Dictionary of Occupational Titles (DOT) and its companion publication, the *Selected Characteristics of Occupations* (SCO). With ordinary supervision and consistent with occupations that can be learned in up to 30 days, the claimant remains able to perform the mental demands of work that requires him to remember instructions and apply commonsense understanding to carry out a few routine and uninvolved tasks over and over again, according to set procedures and sequence with little diversion or interruption, and performing tasks under specific instructions, allowing little or no room for independent action or judgment in working out problems. He requires a setting that measures successful performance by completion of

assigned tasks, rather than the maintaining of a specified pace consistently throughout a workday (i.e., goal orientated). The claimant can tolerate occasional contact but never interaction with the public, and he remains able to engage appropriately with supervisors and co-workers for superficial and task-oriented interactions, provided contact after the completion of the initial orientation and training period is neither frequent nor prolonged.

Tr. 9. Using this RFC determination and hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Cash could perform PRW, specifically as a cleaner, housekeeper, sweeper, industrial cleaner, and floor waxer. Tr. 24. Lastly, after finding that Cash's age, education, work experience, and RFC with additional limitations still allowed him to perform the requirements of other jobs, the ALJ found Cash "not disabled" under SSA § 1614(a)(3)(A). *Id.*

Cash argues that the ALJ made four errors that warrant reversal. ECF No. 20 at 1-2. First, he asserts that the ALJ incorrectly determined that he engaged in substantial gainful activity after applying for SSI. *Id.* at 2. Second, he argues that the ALJ secured post-hearing evidence in the form of a work activity questionnaire from his former employer, but failed to proffer that evidence properly to his attorney and him. *Id.* at 2-3. Third, he claims that the ALJ improperly assessed the persuasiveness of the consulting physicians. *Id.* at 3, 12-13. Lastly, he argues that the ALJ failed to incorporate the limitations she found at the hearing into her RFC. *Id.* at 11, 13.

### A.    Substantial evidence supports the ALJ's finding that Cash engaged in substantial gainful activity between November 2019 and April 2020.

Cash contends that the ALJ erred in finding that he had engaged in substantial gainful activity between November 2019 and April 2020. ECF No. 20 at 5; Tr. 6. Substantial work activity involves significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may qualify as substantial work even if performed on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than he had in his previous work. *Id.* Gainful activity is work done for pay or profit. *Id.* at §§ 404.1572(b), 416.972(b). Work performed for six months or less is treated as an unsuccessful work attempt if the claimant stopped working or reduced his work

and earnings below a certain level, because of his impairment. *Id*. at §§ 404.1574(c)(3), 404.1575(d)(3).

Cash argues that because he worked at R. E. Sweeney ("Sweeney") for less than six months, the ALJ erred by not considering whether his work ended because of his impairment. More specifically, he asserts that substantial evidence does not support the ALJ's determination because in evaluating why he quit his job at Sweeney, the ALJ did not properly consider the medical reports of Dr. Betty Eitel and Dr. Linda Cameron that stated Cash's mental impairments would seriously affect his ability to maintain a consistent job (Tr. 557, 398). ECF No. 20 at 6.

Cash's argument is unavailing because "substantial evidence" simply means enough evidence to support the conclusion of a reasonable mind. *Ripley*, 67 F.3d at 564. Because this is a low bar, there is enough evidence in the record to support the conclusion that Cash did not quit working due to his disability. According to a statement by Cash's former employer, on his last day of work, Cash "clocked out early . . . without finishing the order he was pulling" and has not been seen or heard from since. Tr. 202. This statement suggests that Cash quit his job at Sweeny of his own free will. Additionally, Sweeney's representative stated that Cash completed all of his usual duties, was able to complete these duties without special assistance, regularly reported for work as scheduled, and was able to complete his work in the same amount of time as employees in similar positions. Tr. 200. Cash also matched the level of productivity for other employees in similar positions and similar pay rates. Tr. 201.

Accordingly, the undersigned finds that substantial evidence in the record supports the ALJ's determination that Cash was engaged in substantial gainful activity between November 2019 and April 2020 and that he did not quit his job at Sweeney due to a disability. Because substantial evidence supports the Commissioner's findings, they are conclusive. The reviewing

court may not substitute its judgment for the Commissioner's, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Thus, the ALJ did not err in determining Cash was engaged in substantial gainful activity from November 2019 to April 2020.

      **B.**      **The ALJ properly proffered evidence of the questionnaire to Cash and his counsel.**

Cash states that the ALJ could not rely on the Work Activity Questionnaire (Tr. 200-02), which Sweeney's office manager submitted to her after the hearing, in her analysis because she failed to proffer evidence of this questionnaire to the Cash and his counsel. ECF No. 20 at 7-9. The Questionnaire described the type and quality of work Cash did at Sweeney. Tr. 200-02. According to Cash, neither he nor his attorney obtained a copy of this questionnaire. ECF No. 20 at 7-8. Further, Cash argues that if he had received the questionnaire, he would have objected to its contents, specifically the fact that the questionnaire stated that Cash worked as a forklift driver instead of a construction cleanup worker. ECF No. 20 at 8.

According to the SSA's Hearing, Appeals, and Litigation Law Manual ("Hallex"), an ALJ who receives additional evidence after the hearing from a source other than the claimant or appointed representative must proffer the evidence to the claimant and appointed representative. Hallex § I-2-7-1. This affords the claimant an opportunity to comment on, object to, or refute the evidence by submitting other evidence. *Id.* at § I-2-7-1(A). Proffering evidence also allows the claimant to cross-examine the author if necessary for a full and true disclosure of the facts. *Id.*

An ALJ properly proffers evidence by sending a letter to the claimant and his appointed representative that provides: (1) a time limit to object to, comment on, or refute the proffered evidence, and to submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted; (2) a time limit to submit written questions to the

author(s) of the proffered evidence; and (3) when applicable (*see* Hallex I-2-7-1), an opportunity to request a supplemental hearing, including the opportunity to cross-examine the author(s) of any post hearing evidence. Hallex § I-2-7-30(A). If a claimant is represented, the social security office will send the proffered letter to the appointed representative, with a copy of the proffered letter to the claimant. *Id*. at § I-2-7-30(B).

The record reflects that the ALJ sent Cash and his attorney a letter regarding the questionnaire. Tr. 269-70. Cash acknowledges that the ALJ sent a letter to his attorney and him with the agency's proffer. ECF No. 20 at 8. The letter provided Cash and his attorney the opportunity to request a supplemental hearing and set a time limit of ten days during which Cash could object to, comment on, refute, or submit written questions regarding the evidence. Tr. 269-70. The ALJ properly proffered the questionnaire to Cash and his counsel and committed no error.

### C.    The ALJ correctly evaluated the persuasiveness of the medical opinions.

An ALJ has broad discretion to resolve conflicts in the evidence without the court second-guessing her. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). She is free to reject any medical opinion when the evidence supports a contrary conclusion. *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). An ALJ may even completely disregard the opinion of a treating physician. *See Brown*, 192 F.3d at 500.

No formalistic rules govern how an ALJ must articulate a disability determination. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). But at minimum, ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). While ALJs need not exhaustively explain their reasoning, they must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." *Id.*

§ 404.1520c(b)(2). This requirement is obligatory for claims filed on or after March 27, 2017. Id.
Cash filed for SSI on April 15, 2019, and is, therefore, entitled to the explanation.

> ### i.    The ALJ properly evaluated Dr. Eitel's medical opinion.

Cash states that the ALJ erred in finding the medical opinion of psychologist Betty Eitel,
Ph.D., unpersuasive given the significant functional limitations detailed in her evaluation. *Id.* at
12. He also argues that the ALJ erred by not giving Dr. Eitel's medical opinion more significant
persuasive weight than Cash's past employment history as a semi-skilled forklift operator. *Id.*

An ALJ will not defer or give any specific evidentiary weight, including controlling weight,
to any medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a). She is
free to reject any medical opinion when the evidence supports a contrary conclusion and decide
based on the totality of the record. *Harris*, 209 F.3d at 417. Evidence of Cash's work history at
Sweeney was properly proffered to the parties and made a part of the record. Tr. 269-70. As a
result, even though Dr. Eitel described significant functional limitations that Cash had, because
the ALJ was not bound to give specific weight to those limitations and could look at the entire
record to make her determination, she could consider all of the evidence, including the work
history, when determining the relative persuasiveness of Dr. Eitel's medical opinion.

In her RFC, the ALJ evaluated the supportability and consistency of Dr. Eitel's medical
opinion, specifically focusing on the inconsistencies between her examination of Cash when he
was not taking his medication and his subsequent clinical presentations and work history when he
was taking his medication. Tr. 22.  A few months after Dr. Eitel's initial observation, Cash began
a series of follow-up appointments. Tr. 14-15, 22, 402-97. During these appointments, Cash was
well groomed (Tr. 419-20, 433-34), was oriented to person, place, and time (Tr. 419-20, 424, 433-
34), had normal and logical thought processes (*id.*), had intact recent and remote memory (*id.*),

and had an intact fund of knowledge (Tr. 424). He also achieved sobriety from alcohol and illicit substances. Tr. 431. Around the same time as these appointments, Cash also began work at Sweeney. Tr. 200. As noted earlier, Cash was successful at his job there, functioning at the same level as similarly situated employees. Tr. 200-202.

The ALJ found that the combination of Cash's follow-up appointment results and his successful work history rendered Dr. Eitel's medical opinion unsupported and inconsistent. Consequently, she was free to reject the opinion as unpersuasive because evidence in the record supported a contrary conclusion. *Harris*, 209 F.3d at 417. This point does not require reversal.

### ii.    The ALJ properly evaluated Dr. Cameron's medical opinions.

Cash also states that the ALJ erred in finding the opinions of psychologist Linda Cameron, Ph.D., to be unpersuasive, arguing that the ALJ improperly discounted Dr. Cameron's evaluation because she based it on Cash's oral representations. ECF No. 20 at 13-14. The evidence in the record does not support Cash's argument.

First, the ALJ considered Dr. Cameron's medical opinions at length and determined that her opinion of Cash's physical condition was unpersuasive. Dr. Cameron found that both the contracture of Cash's little finger, allegedly related to an autism disorder that she did not diagnose, and his gastroesophageal reflux disease would significantly interfere with his physical ability to work. Tr. 22, 17, 542. Dr. Cameron then stated that Cash should be limited to sedentary exertion. The ALJ, however, noted that the record also contained evidence of Cash's work history as a forklift operator, which directly conflicted with a sedentary limitation. Tr. 22, 554. Moreover, the ALJ found that many of Dr. Cameron's comments about Cash's physical conditions were outside her purview as a psychologist. Tr. 22. For these reasons, and not any self-reported statements, the

ALJ concluded that Dr. Cameron's medical opinion concerning Cash's physical condition was unpersuasive. Thus, the ALJ did not improperly discount the opinion due to Cash's self-reporting.

Second, the ALJ recognized the persuasiveness of Dr. Cameron's medical opinions concerning Cash's ability to perform work-related mental demands. *Id*. The ALJ, however, stated that "some, if not much, of the instruments used depend upon the claimant's self-report." Tr. 23. The ALJ questioned Cash's self-reporting of limitations because he made them when he was off of his medication, not simply because they were self-reports. Tr. 23. While off his medications, Cash was not able to maintain eye contact or build rapport. Tr. 398. He hallucinated both visually and audibly, was unable to answer questions regarding personal orientation, and could not repeat two words immediately after hearing them. *Id*. However, as noted above, when he took his medication, he could engage with others and maintain work. Therefore, even though Dr. Cameron recognized that his comments were made when he was not taking his medication and that he had a "tendency towards self-abatement," (TR. 23), substantial evidence supports the ALJ's conclusion that his behavior on and off medicine, especially as it affected his ability to work, was inconsistent.

Because of this inconsistency, the ALJ was within her authority to find Dr. Cameron's medical opinion to be less than persuasive. 20 C.F.R. § 404.1520c(a).  Because the ALJ properly explained her persuasiveness decision, she did not err in expressing her skepticism of Cash's the self-reported statements to Dr. Cameron when determining the persuasiveness of his opinion.

### D.    The ALJ properly incorporated all of the limitations she found into her RFC.

Cash argues that the ALJ failed to incorporate the limitations she found at the hearing into her RFC. ECF No. 20 at 8-9. Failure to do so would be error because an ALJ must incorporate any limitations she finds into her RFC analysis. *See* 20 C.F.R. § 404.1545(c) (prior to determining a plaintiff's RFC, an ALJ assesses a plaintiff's mental impairments). The ALJ considers evidence

of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. *Id*. She then uses the "paragraph B criteria" to rate the severity of a plaintiff's mental limitations. *Id*. at § 404.1520a(c)(3). Also, the ALJ considers limitations and restrictions that affect other work-related abilities. *Id*. at § 404.1545(d). The ALJ found that Cash has moderate limitations. Tr. 8.

Having made these findings, the ALJ then makes a disability determination. "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Moreover, the ALJ must base her RFC assessment on "all of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Athena G. v. Kijakazi*, No. 1:20-CV-00051-BU, 2021 WL 3729033, at *9 (N.D. Tex. Aug. 2, 2021), *rec. adopted*, 2021 WL 3726741 (N.D. Tex. Aug. 23, 2021); *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012) (citing SSR 96-8p), *rec. adopted* 2012 WL 696756 (N.D. Tex. Mar. 5, 2012). As part of this assessment, the ALJ must adequately discuss and consider the limiting effects of a plaintiff's mental impairments in formulating her RFC. *Athena*, 2021 WL 3729033 at *11; *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6, 8 (N.D. Tex. Jan. 11, 2016).

The ALJ properly considered the limiting effects and restrictions of Cash's mental impairments in her RFC decision and included specific limitations. Tr. 8. She based these limitations on both medical opinions in the record and Cash's responses to the ALJ at the hearing.

In her RFC, she discussed the mental exams conducted by providers during the relevant period. She found that Cash demonstrated slow mental processing, could not sustain concentration and persist in a work-related activity at a reasonable pace, and could only intermittently remember, understand, and carry out instructions for one-two steps. Tr. 8, 397-98. The ALJ also discussed the Function Report that stated that Cash did not care for his personal hygiene and required his mother to help him cut his hair and shave. Tr. 8, 232-33, 237. Finally, the ALJ referenced Cash's statements during the hearing that "he does not like to work because he does not want to be around people" and that he "need[s] reminders to help with household chores." Tr. 8, 49. This discussion of the relevant evidence demonstrates that the ALJ's analysis contained a thorough discussion of Cash's mental limitations based on medical opinions and his testimony at the hearing. Substantial evidence supported the ALJ's finding of a moderate mental limitation.

The ALJ must then take her finding on the severity of the claimant's limitations and incorporate it into her RFC. 20 C.F.R. § 404.1545(c). The ALJ's RFC here did so for several reasons. First, according to the Dictionary of Occupational Titles ("DOT"), individuals with a moderate limitation are still able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. U.S. Dept. of Labor, Dictionary of Occupational Titles, App. C, § III, Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). Such persons also can deal with problems involving a few concrete variables in or from standardized form. *Id*. Additionally, moderate limitations on reasoning appear consistent with the limitation of simple and routine work tasks. *See Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 613 (E.D. Tex. 2009). The ALJ incorporated these limitations into her RFC by restricting Cash to jobs that require him to "remember instructions and apply commonsense understanding to carry out a few routine and uninvolved tasks over and over again, according to set procedures and sequence with little

diversion or interruption, and performing tasks under specific instructions, allowing little or no room for independent action or judgment in working out problems." Tr. 9.

Accordingly, substantial evidence shows that the ALJ properly incorporated the mental limitations that she found in step two and three into her RFC. She based her RFC the substantial evidence of medical opinions and Cash's testimony at the hearing. There is no error on this point.

## IV.    CONCLUSION

Because the Commissioner applied the correct legal standards in evaluating Cash's medical limitations, correctly proffered all evidence to Cash and his attorney, and because substantial evidence supports the ALJ's findings, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on November 22, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE